In the Supreme Court of Georgia

Decided: October 5, 2015

S15F1079.  SCOTT v. SCOTT.

BENHAM, Justice.

This case involves Husband Stephen Turner Scott's challenge to the trial

court's final child support order entered in the divorce action initiated by Wife

Amanda Kay Scott.  At the time of the final bench trial in the parties' divorce

case, Husband had ceased being a self-employed farmer, as he had been at the

time the trial court entered the temporary child support order, and he had

commenced working as an employee of his parents' farming business.  He had

also moved into a house owned by his parents.  The final decree required

Husband to pay $1,004.00 per month in child support based upon the trial

court's finding that Husband's gross monthly income was $5,299.39.  This

figure consisted of a finding that Husband earned $2,166.67 in monthly wages,

along with monthly fringe benefits as follows: $1,177.40 for the use of a 2011

Ford F-250 truck provided by his employer/parents; $100.00 for automobile

insurance premiums; $400.00 for gasoline; $30.32 for the monthly average ad valorem tax and registration payments for the truck; $1,000.00 for the use of a house belonging to his parents; $350.00 for the power bill paid by his parents; and $75.00 for a cellular telephone they provided to him. We granted Husband's discretionary appeal to consider whether the trial court erred in its determination of fringe benefits available to Husband for purposes of calculating his gross monthly income.

"Fringe benefits for inclusion as income or 'in kind' remuneration received by a parent in the course of employment, or operation of a trade or business, shall be counted as income if the benefits significantly reduce personal living expenses. Such fringe benefits might include, but are not limited to, use of a company car, housing, or room and board." OCGA § 19-6-15 (f) (1) (C). The primary issue with respect to each sum the trial court found to constitute a fringe benefit is whether it was received by Husband in the course of his employment. "'In the appellate review of a bench trial, this Court will not set aside the trial court's factual findings unless they are clearly erroneous, and this Court properly gives due deference to the opportunity of the trial court to judge the credibility of witnesses.'" (Citation omitted). *Autrey v. Autrey*, 288 Ga. 283,

284-885 (702 SE2d 878) (2010).  See also *Walton v. Walton*, 285 Ga. 706, 708 (2) (681 SE2d 165) (2009).  But we review de novo the trial court's application of the law to the facts.  See *Lawrence v. Lawrence*, 286 Ga. 309, 310 (1) (687 SE2d 421) (2009).  For the reasons that follow, we affirm in part and reverse in part, and remand for further proceedings.

*Truck and expenses associated with it:*  The undisputed evidence shows the truck in question is a heavy-duty truck with the ability to haul heavy farming equipment, and is not the type of truck typically used solely for personal transportation due to cost of operation.  Husband is the owner of this truck and he previously used it in his own farming business before he quit that operation and started to work for his parents, though he also previously used it for personal transportation.  When Husband went to work for his parents, his father's farming business, in an informal arrangement, commenced leasing the truck from Husband, and in consideration for its use the father's farming business now pays Husband's debt service on the truck and all expenses incurred in the operation and maintenance of it.  Husband's parents own other vehicles used on the farm and they employ other farm workers than Husband.  The undisputed evidence shows that during the work day, each employee of the

3

parents' farming business uses whatever truck is best fit for the job the employee is doing. As such, Husband testified he is not assigned the specific use of the F-250. He also testified that he, alone, among the farm's employees, is permitted to drive a truck home at the end of the work day because his parents do not provide a company-owned vehicle for the personal use of their employees. Husband also testified he does not always drive home the F-250; instead, he drives home whatever vehicle he was using at the end of the day, unless he needs a vehicle with a rear seat to transport his children, in which case he may chose to drive home the F-250 or another vehicle with a rear seat, such as an F-150 owned by his father.

The trial court attributed the entire cost of the truck payment and costs of its operation to Husband as a fringe benefit that increased his income for purposes of calculating child support. Although the undisputed evidence shows the truck is not exclusively used by Husband and that it is used primarily for his parent's farming business, whether by him or by others, the evidence also shows Husband is permitted to drive either the F-250 or some other vehicle for his personal use. Since Husband previously used this vehicle not only for his previous farming enterprise but also as his sole personal vehicle, we cannot

conclude the trial court erred in finding the value of the use of the F-250 provided to Husband by his father's business was a fringe benefit of his employment, as that term is used in OCGA § 19-6-15 (f) (1) (C). If not for this arrangement Husband would have been required to provide his own vehicle for personal use, and thus the trial court's finding that the use of this vehicle significantly reduces Husband's personal living expenses was not clearly erroneous. See *Simmons v. Simmons*, 288 Ga. 670 (706 SE2d 456) (2011). Consequently, we find no error in the trial court's inclusion of the amount of the truck payment, and all other truck expenses except fuel costs, in Husband's gross income, as a fringe benefit, for purposes of calculating child support.

With respect to fuel costs, however, the undisputed testimony was that, during the growing season, the F-250 truck uses about eighteen gallons of gasoline per day incurred in the farming business, amounting to an estimated $400 per month of fuel. These fuel costs are paid by Husband's employer/parents.[1] No evidence was presented to demonstrate the amount by

---

[1] No evidence was presented as to what number of months was included in what Husband referred to as the "growing season," and no evidence was presented regarding the monthly cost of fuel in other months, so that the annual monthly average of fuel costs could be calculated. Yet, the trial court used the $400 per month figure as the average monthly sum to be attributed to Husband's income.

which these payments reduce Husband's personal living expenses. Instead, the undisputed testimony was that Husband purchased gasoline for the truck, as needed, from his personal funds when he used it for personal use. Consequently, we reverse the award of child support based upon the trial court's conclusion that the $400 per month business-related fuel costs paid by Husband's employer/parents is a fringe benefit of his employment, and remand for a re-calculation of Husband's gross income for purposes of awarding child support, in accordance with this opinion.

*Housing along with payment of the monthly power bill for the house:* The undisputed evidence established that Husband's parents purchased the house in which Husband now lives in 2012 while the parties were still married, before Wife filed the divorce complaint, and before Husband commenced working for his parents. Husband's parents have retained ownership of the house. Husband's undisputed testimony established that his parents, prior to the time he commenced working for them, intended to provide the use of the house to the couple and their children as a place to live, and the testimony established that the couple commenced preparing to move in. Once the complaint was filed, however, Husband alone moved into the house, and the parties' children stay

with him there when he has custody of them. According to the undisputed evidence, Husband's parents do not provide a residence for any other employees. No evidence was presented to support the finding that the use of the house owned by Husband's parents was granted "in the course of employment," a requirement for finding a financial benefit is a fringe benefit of employment pursuant to OCGA § 19-6-15 (f) (1) (C). Even if it were a fringe benefit, no evidence was presented to establish the rental value of the house. Nevertheless, the trial court found that its use amounts to a $1,000 per month fringe benefit to be included in Husband's monthly gross income. It further found, without supporting evidence, that Husband's parents' payment of the power bill for the house is a fringe benefit of employment.

We reverse the child support award to the extent it improperly added $1,000.00 per month for use of the house and $350.00 per month for payment of Husband's power bill to his gross monthly income as fringe benefits of his employment. Upon remand, however, the trial court may consider the value of these benefits as grounds for a nonspecific deviation from the presumptive amount of child support due from Husband as permitted by OCGA § 19-6-15 (i) (3), after making findings required by OCGA § 19-6-15 (i) (1) (B) that take

into consideration the respective circumstances of the parents and the best interests of the children.

*Cellular telephone*: The evidence supports the trial court's finding that Husband's employer/parents provide him with $75 per month of cellular telephone service. The evidence established that his employer/parents also provide similar benefits to their other employees and thus the evidence supports a finding that this telephone service was "received . . . in the course of employment." Although Husband testified he purchased his own pre-paid phone service, he admitted he seldom used that service. Since the provision of phone service by the employer permits Husband to forego the expense of other phone service, this evidence supports a finding that this service "significantly" reduces Husband's personal expenses, in the amount of $75.00 per month. We therefore affirm that portion of the child support award that added the benefit of cellular phone service to Husband's gross monthly income as a fringe benefit of his employment.

Judgment affirmed in part and reversed in part, and case remanded with direction. All the Justices concur.

8